HABELER et al. v. ROGERS et al.

(Circuit Court of Appeals, Second Circuit.  June 2, 1904.)

No. 205.

1. SALES—BREACH OF CONTRACT BY BUYER—SELLER'S REMEDIES.

On breach of a contract of sale by the buyer, the seller is entitled, after everything necessary to vest title in the buyer has been done, to store or retain the goods for the buyer's benefit, and recover the contract price; to sell the goods, after notice to the buyer, for the latter's account, and recover the difference between the contract price and the net proceeds of the sale; or, without doing either, to recover the difference between the contract price and the market value of the goods at the time and place of delivery.

2. SAME—TENDER.

Where a buyer notified the seller of goods that he would not accept the same, the seller was not required to make a formal tender of the goods in order to sustain an action for breach of contract.

3. SAME—ABILITY TO PERFORM—EVIDENCE.

Where, in an action for breach of a contract to purchase 5,000 tons of phosphate rock, to be delivered between February 1 and June 1, 1900, at the buyer's option, at the rate of not more than 2,500 tons in a month, the sellers proved that they were selling agents of an association of phosphate rock miners in Tennessee, and exclusive selling agents of another mining concern in that state, and had a contract with each to deliver in April and May, 1900, as much as 2,500 tons per month of such rock as

¶ 2. See Sales, vol. 43, Cent. Dig. § 1087.

was called for in the contract, and that each had the requisite quantity of rock on hand to supply the contract, the evidence was sufficient to establish the sellers' ability to perform.

**4. SAME—ELECTION OF REMEDIES.**

Where, after defendants notified plaintiffs that they would not accept phosphate rock contracted for, plaintiffs gave notice of their intention to store or resell such rock, such notice did not constitute such an election by plaintiffs to treat the contract as still subsisting for the benefit of the defendants as precluded plaintiffs from maintaining an action to recover damages for breach of the contract, on the theory that it was terminated by defendants' notice of their refusal to accept.

In Error to the Circuit Court of the United States for the Southern District of New York.

R. B. Honeyman, for plaintiffs in error.

H. A. Forster, for defendants in error.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

WALLACE, Circuit Judge. This is a writ of error by the defendants in the court below to review a judgment for the plaintiffs entered upon a verdict of a jury.

The action was brought to recover damages for the breach by the defendants of a contract with the plaintiffs made August 9, 1899, whereby the defendants agreed to buy 5,000 tons of phosphate rock of the plaintiffs at the price of $4 per ton, "delivery to be completed when loaded on cars at Mt. Pleasant, Tennessee, and sampling to be done at time of loading." By the terms of the contract, the rock was to be shipped to the defendants at any time between February 1 and June 1, 1900, at buyers' option, "but seller to have at least fifteen days' notice before goods are required, and goods to be loaded at the rate of 200 tons for each working day, not more than 2,500 tons in one month." It was proved upon the trial that the plaintiffs were the selling agents of an association of phosphate rock miners in Tennessee, and the exclusive selling agents for another mining concern there, and had a contract with each to deliver as much as 2,500 tons of rock per month in April and May, 1900, such as was called for by the contract with the defendants, and that each had the requisite quantity of rock on hand to supply the contract. It was also proved that on April 19th the defendants wrote the plaintiffs as follows:

"We have delayed answering your letters with reference to the 5,000 tons phosphate rock, hoping that we might be able to give shipping directions. * * * The war in South Africa has caused an absolute dearth of vessels and it is impossible for us to get anything to enable us to carry out the contract. * * * We can only say that we are forced to accept your proposition to hold us liable for your loss, if any, and we hope you will make your loss as little as possible."

April 30th the plaintiffs wrote the defendants, inclosing an invoice for 2,500 tons of rock, and stating:

"Goods not moved according to contract, therefore at your risk, and any and all expenses and losses for your account, storage charges for your account."

On May 7th the defendants again notified the plaintiffs as follows:

"Replying to your favor of the 4th inst., we beg to say that we intended by our letter of the 10th ult., to notify you of the fact that we were not going to take the phosphate called for by the contract, and our subsequent letters are quite sufficiently positive upon that point we think. We will of course be glad to meet you with a view of adjusting any losses."

May 11th the plaintiffs wrote to the defendants as follows:

"In view of your positive notice that you will not accept delivery, we notify you herewith of our intention to sell the phosphate on your account for the best price obtainable in open market, and will look to you for any loss which we may sustain."

May 14th, answering this letter, the defendants wrote to plaintiffs:

"We must request you not to sell any phosphate rock on our account."

Evidence was given upon the trial tending to show that the market price for phosphate rock of the contract kind in Tennessee during the months of April and May was as low as $2.50 per ton, that there was little or no sale for it during those months, and that the price declined from about $4 per ton in 1899 to $2.75 in the spring of 1900. The jury found a verdict for the plaintiff for $3,750.

The principal question raised by the assignments of error is whether the trial judge was correct in refusing to direct a verdict for the defendants. The defendants requested such a direction upon the ground that the plaintiffs had not shown that they were ready, able, and willing to deliver the phosphate, and it was obligatory upon them to show that they were ready to make tender.

The law applicable to actions for a breach of contract of sale of goods is so familiar that it almost seems superfluous to repeat the settled rules which obtain. Upon a breach by the vendee the vendor is at liberty to fully perform upon his own part, and, when he has done all that is necessary to effect a delivery of the goods, so as to pass the title to the vendee, he may store or retain them for the vendee, or give the vendee notice and resell them. If he pursues the former course, he is entitled to maintain an action for the contract price of the goods. If he pursues the latter, his recovery will be the difference between that price and the net proceeds of the resale. But it is not obligatory upon him to adopt either of these courses, and, if he does not care to do so, he is entitled to recover the difference between the contract price and the market price or value at the time and place of delivery fixed by the contract. Where a vendee explicitly refuses to perform his part of an executory contract before the time for performance by the vendor has arrived, no tender of performance on the part of the latter is necessary to entitle him to recover damages for the breach.

The defendants having explicitly renounced fulfillment of the contract, proof of the formal requirements to pass title, or to place the phosphate at the risk of the defendants, was not necessary, to entitle the plaintiffs to maintain the action. It would have been an idle ceremony for the plaintiffs to collect together the contract quantity of phosphate in order to make a formal tender of it to the defendants, and neither good faith towards the defendants, nor good sense, nor any technical rule of law, required them to do so. It was necessary for them to

show upon the trial that they could have procured it—in other words, that they were in a situation to perform the contract if the defendants had not repudiated it—because otherwise it would not have appeared that they had sustained any substantial damage from the breach. Bigler v. Morgan, 77 N. Y. 312, 319. The evidence introduced was sufficient for that purpose. Stanton v. Small, 3 Sandf. 230. The contention for the defendants that the plaintiffs, by giving notice of their intention to store or resell the phosphate, elected to treat the contract as still subsisting for the benefit of the defendants, and became thereby subject to the performance of all its obligations on their own part, is without any foundation. The authorities cited in its support are those like Frost v. Knight, L. R. 7 Exch. 111, where an action is brought before the time for performance on the part of the defendant has expired. upon the theory of an anticipatory breach on his part, and those like Bernstein v. Meech, 130 N. Y. 354, 29 N. E. 255, which do not proceed upon the theory of an anticipatory breach, but after the breach the promisee has elected to keep the contract alive, and the promisor has acted in reliance upon such election. In such cases the effect of the election to treat the contract as still subsisting is to permit the other party to fulfill it and obtain its benefits, notwithstanding his previous breach. The election is a waiver of the breach. The authorities cited have no application to the present case. There having been no tender of the phosphate, and the title not having passed, the notices which were given by the plaintiffs proceeded upon a mistaken notion of their rights. The notices, however, in no way altered the situation of the defendants, or imposed any new obligations upon themselves. Their only effect was to evoke counter notices from the defendants that they would not consent to the course proposed. Neither party was influenced by them. Even if the plaintiffs had acted upon the notices and resold the phosphate, this would not have been a waiver of their claim for damages for nonperformance of the contract. Sands v. Taylor, 5 Johns. 395, 410, 4 Am. Dec. 374. The trial judge was correct in refusing to direct a verdict for the defendants.

The rulings of which error is assigned upon the question of damages, and in respect to the admission and exclusion of evidence, have been examined, and we do not find that any of them require detailed consideration or afford any substantial ground of complaint.

The judgment is affirmed.