## WEINBERG v. HOGAN MILLING CO. *

(Circuit Court of Appeals, Eighth Circuit.   May 17, 1924.)

No. 6461.

**1. Sales ⚖══384(2)—Measure of damages for breach by buyer of contract of sale.**

In an action by the seller for breach of contract for sale of flour, which plaintiff had on hand ready for delivery, the measure of damages is the difference between the market value of the flour at the place of delivery at the time of breach and the contract price.

**2. Evidence ⚖══113(2)—Evidence of value of flour in seaboard and foreign markets held admissible on question of market value at inland point.**

On the question of the market value of flour at Kansas City, evidence *held* admissible to show its value in seaboard and foreign markets, which affected its market value at inland points.

**3. Principal and agent ⚖══103(14)—Sales ⚖══23(4)—Acceptance of shipment by buyer held ratification of contract as modified by seller.**

Defendant gave to plaintiff's agent an order for flour which expressly provided that it was subject to confirmation by plaintiff, and that the agent had no authority to change its terms, of which defendant also had actual knowledge. Plaintiff returned the contract, with a modification as to times of shipment, which the agent assumed authority to change, *without notice to plaintiff. Held,* that defendant had no right to rely on such changes, and that his subsequent acceptance of the first shipment, which included 125 barrels of free flour, for which the contract provided, was a ratification of the contract as modified by plaintiff, and bound him to accept further shipments in accordance with its terms.

In Error to the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Action at law by the Hogan Milling Company against A. Weinberg, doing business as the Weinberg Grocery Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Thomas J. Seehorn, of Kansas City, Mo. (Seehorn, Barnes & Schwartz, of Kansas City, Mo., on the brief), for plaintiff in error.

Glen A. Wisdom, of Kansas City, Mo., and L. B. Morris, of Junction City, Kan., for defendant in error.

Before STONE and LEWIS, Circuit Judges, and PHILLIPS, District Judge.

PHILLIPS, District Judge.   The Hogan Milling Company, plaintiff below, brought this action against A. Weinberg, defendant below, to recover damages for the alleged breach of a contract for the sale of flour. The parties will be referred to as plaintiff and defendant, respectively, as they appeared in the lower court.

The facts are as follows:

On March 15, 1921, one T. J. Gallagher, salesman for the plaintiff, with authority only to solicit orders, subject to confirmation by plaintiff, in accordance with a printed form of order blank furnished by the plaintiff, obtained from the defendant on such printed blank an order for 2,000 barrels of flour. The defendant knew the limitation of Gallagher's authority at the time he gave the order. Under the terms of

---

⚖══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied September 8, 1924.

the order the flour was to be packed in 24-pound sacks labeled "Hogan's Kansas City Pride Brand," and the plaintiff was to furnish with the first shipment, 2,000 12-pound sacks of the flour without cost to defendant, and was to pay for one full-page advertisement of the flour in the Kansas City Star, to cost $585.

The order further provided:

"This contract is made subject to terms and conditions printed on back hereof, which terms and conditions are binding on both parties to the contract.

"This order is subject to confirmation by the Hogan Milling Company. * * *

"(3) *Contract Not Subject to Change.* That there are no conditions, representations, or warranties, oral or otherwise, and that there shall be no assignment or cancellation of this contract except as herein stated, and that no agent or representative has authority to modify the printed terms of this contract.

"(4) *Shipments Within Sixty Days.* That the commodities specified in this contract shall be shipped within sixty days from the date of confirmation by the seller unless a shorter time is herein expressly provided, and that delivery by seller to carrier at initial point is shipment. * * *

"(7) * * * Buyer shall furnish shipping instructions to the seller not less than fifteen days prior to the time of shipment."

In the blank space in the order following the words "Time of shipment" there was inserted "One car at once." On receipt of the order the sales manager of plaintiff added thereto, "Balance one car every two weeks," and forwarded a copy of the order as modified to the defendant, with a letter, dated March 16, 1921, in which he called defendant's attention to the words which had been inserted, and stated that the contract must have shipping dates. The letter and modified order were received by the defendant in due course of mail. Gallagher was present when they were delivered to defendant at his office. Defendant complained of the modification and dictated a letter concerning same to the plaintiff. Thereupon Gallagher undertook to modify the order as changed by the sales manager of plaintiff, by noting on plaintiff's letter to defendant: "This flour to be taken out as soon as possible. T. J. Gallagher"—and took the letter which defendant had dictated.

On March 22, 1921, plaintiff shipped the defendant one carload of flour, containing 225 barrels, 100 barrels of which were invoiced to defendant at $9 per barrel and 125 barrels as free flour. The free flour then had a market value of $1,125, not including the cost of sacks. On the following day plaintiff wrote a letter to defendant, advising him of the shipment. Defendant received this letter and the invoice in due course of mail, accepted the carload of flour, and paid the invoice price thereof.

Early in April, 1921, defendant furnished specifications for the advertisement in the Kansas City Star. The advertisement was inserted in accordance therewith and the plaintiff paid therefor the sum of $585.20. Thereafter the defendant refused to furnish any further shipping instructions for flour.

Under date of April 28th, defendant wrote plaintiff the following letter:

"In reply to your letter of the 27th, wish inform you that I my understanding was that I was to take the flour out as soon as possible.

"Mr. Gallagher your salesman gave that to me in writing and told me to ignore the shipping instructions in your returned contract to be he erased that part and gave it to me in writing that I can take out as soon as possible.

"Conditions are not so that I can take same out yet as the flour business has fallen off and the low prices has made competition very keen and naturally it is a little hard to push yours just now, I will notify you that as soon as I am in need of flour."

On May 14, 1921, plaintiff wired the defendant, demanding that he furnish shipping instructions by 12 o'clock noon, Wednesday, May 18, 1921. The defendant replied thereto by letter, dated May 18, 1921, in which he stated he had never agreed to the modification made by the plaintiff's sales manager, that he so notified the agent, Gallagher, that Gallagher and defendant had orally agreed defendant should take one carload of flour, and that in the future defendant would order flour at such times and in such quantities as his needs required, and that the car of flour was received and paid for in accordance with such oral agreement. There was no evidence that Gallagher had communicated to the plaintiff what took place between him and defendant concerning plaintiff's letter of March 16, 1921, and the evidence on the part of the plaintiff denied any knowledge thereof until receipt of defendant's letter of April 28, 1921.

Verdict and judgment were for the plaintiff in the sum of $3,200.37. From the judgment defendant sued out a writ of error to this court.

The contention of the plaintiff is that the defendant accepted the free flour and free advertising and the 100 barrels of flour at $9 per barrel pursuant to the terms of its modified order, and thereby impliedly accepted the offer. The defendant denies he accepted the modified order. His contentions are: That he notified the agent, Gallagher, of his refusal to accept and thereupon orally agreed with the agent that he would take the first carload of flour which the agent represented as having been already loaded; that he would take the balance of the flour at such times as his needs required, and that the advertisement should be run at plaintiff's cost; and that he had a right to assume the agent had notified plaintiff of this oral agreement and the flour was shipped pursuant thereto.

The first two assignments of error are based upon the refusal of the court to admit certain evidence. As this evidence was later received these assignments are without merit.

[1] The third assignment of error is predicated upon the refusal of the court to permit the defendant to show there was a profit in whole grain wheat during the months of March, April, May, and June, 1921. This evidence was not admissible. The contract was not for the sale of wheat nor to manufacture and deliver flour, but was a contract for the sale and delivery of a specified kind and quantity of flour, to be packed under a special brand, and the price of wheat did not enter into the transaction. Plaintiff had the flour on hand ready to make delivery prior to the breach. Considering the measure of damages under such a state of facts, this court in Kingman & Co. v. Western Manufacturing Co., 92 Fed. 486, 488, 34 C. C. A. 489, 491, said:

"The general and the just rule for measuring the damages for a breach of a contract for the sale of personal property is the difference between its

market value and its contract price, because the vendor is presumed to have the property on hand; and his profits if the contract is performed, and his loss if it is broken, is the exact difference between the price he can sell the property for in the market and the price he is entitled to receive for it under the contract. This was the true measure of the loss of the defendant in error on the 106 mowers which it had made and was ready to deliver when the contract was broken, because it had them on hand, and it was entitled to their contract price; while after the breach it could obtain only their market value, so that it necessarily lost the difference."

See, also, Russell-Miller Milling Co. v. Bastasch, 70 Or. 475, 142 Pac. 355.

[2] The fourth assignment of error is based upon the admission of the testimony of the witness Hogan as to the market price of flour at New Orleans, La., and Glasgow, Scotland. Hogan testified to the market value of flour at Kansas City, and referred to these other points only as a base from which to fix the market value at Kansas City. It is very common in the mercantile trade to-day for market prices of commodities at inland points to be based on seaboard markets, less cost of transportation. We see no error in the admission of this evidence.

[3] The fifth assignment of error is based upon the giving of plaintiff's requested instruction No. 1. Contention is made that this instruction assumed the authority of Gallagher to change the terms of plaintiff's counter offer was an issue before the jury, and that no such issue was involved in the case beyond the mere making of a new offer by defendant to plaintiff through the same agency.

The sixth assignment of error is based upon the giving of instruction No. 3, requested by the plaintiff. This instruction told the jury that if the defendant received plaintiff's counter offer contained in Exhibits B and C, which were the amended order and the letter of transmittal of March 16, 1921, and did not notify the plaintiff of his refusal to accept the terms thereof, and that plaintiff had no actual notice of his refusal and the defendant after receipt of said counter offer gave specifications for the advertisement which was run and paid for by plaintiff, and that plaintiff shipped 100 barrels of flour to defendant to apply on the contract together with 125 barrels of free flour, and that defendant received said flour and paid for 100 barrels thereof in accordance with the terms of the counter offer that then and in that event the defendant was bound by the terms of said counter offer. The criticism of this instruction by counsel for defendant is likewise bottomed upon the contention that on receipt of the counter offer from plaintiff's sales manager defendant submitted another counter offer to plaintiff through its agent, Gallagher.

We do not think the record in the case bears out this contention on the part of the defendant. Defendant's own testimony showed that Gallagher was present when defendant received plaintiff's counter offer; that Gallagher undertook to modify the offer by notation thereon; that an agreement was entered into between Gallagher, as agent, and defendant, to the effect that defendant should accept the first carload of flour and order and receive the balance as his needs required, and that the advertisement should be run without obligation on the part of defendant. Defendant's letters of April 28 and May 18, 1921, speak

of this notation and the oral understanding with Gallagher, and attempt to justify defendant's refusal to give further shipping instructions thereon. A fair consideration of all the evidence shows clearly that defendant relied upon the modification of the offer and oral agreement which Gallagher undertook to make. Clearly Gallagher had no authority to make any such contract. That defendant well knew this appears from his own testimony. He had no right to rely on this contract until he received confirmation thereof from the plaintiff. The shipment of the flour did not constitute a ratification of Gallagher's unauthorized act, because the plaintiff had no knowledge thereof. These instructions therefore correctly stated the law applicable to the facts as disclosed by the record in this case.

What we have said with reference to assignments of error numbered 5 and 6 disposes of assignments of error numbered 7, 8, 9, 10, and 11.

The judgment is affirmed.

STONE, Circuit Judge (concurring). I think it advisable to set forth my reasons for determining the assignments of error concerning the admission of evidence of sales of flour in New Orleans and in Glasgow, Scotland.

On the matter of damages, there was no dispute that damages had occurred, provided liability existed. In a case of this character, differences in market value at the point of delivery are ordinarily the measure of recovery and there seem present here no circumstances which would make that rule unjust or inapplicable. The question which arises in this regard is concerning the evidence introduced to establish market value. Plaintiff sought to establish the market value at Kansas City on the particular date involved, by testimony that there was no market for that particular brand of flour in Kansas City on the date in question but that there was at other points (New Orleans and Glasgow); by showing the market value at those points and by estimating the value at Kansas City therefrom on a freight rate basis. The record shows that there was objection to the evidence as to the value at New Orleans but no objection as to similar evidence concerning Glasgow. As the difference at Kansas City in the New Orleans and Glasgow bases was only four cents per barrel, the objection to the New Orleans evidence seems trivial in its results.

There was other evidence, by plaintiff, in rebuttal of the market value at Kansas City. There was also evidence of the market value at Kansas City by defendant. The amount of the verdict clearly shows that the damages were based upon some estimate by the jury of the market value at Kansas City which was at least as favorable to the defendant as that shown by defendant's testimony. The figures showing this are as follows: The verdict was for $3,200.37. Under the contract and charge of the court (in these respects unexcepted to), there was an allowance of 25 cents per barrel or a total of $475 for certain marketing expenses and the court authorized interest at 6 per cent. for almost two years; defendant's estimate of the wholesale price at Kansas City was $7.60, which would mean a loss under the contract of $1.40 per barrel on 1,900 barrels or $2,660. If the $475 be added to $2,660, that total ($3,135)

when subtracted from the verdict for $3,200.37 will not leave enough to cover practically any of the interest authorized. I therefore conclude that, if there was any error properly excepted to of which advantage could be taken, it was of no harm to this plaintiff in error.