## GRIFFIN GROCERY CO. v. RICHARDSON.

(Circuit Court of Appeals, Eighth Circuit. January 2, 1926. Rehearing Denied March 12, 1926.)

No. 6832.

**1. Evidence ⬀461(1)—Where final offer and acceptance is by telegram, resort will be had to prior correspondence to arrive at intent.**

Where contract for sale of sorghum seed was negotiated by exchange of telegrams and letters, and offers and counter offers were made, and finally an offer by telegram was accepted by telegram, resort could be had to prior telegrams and letters to arrive at intent and meaning of parties.

**2. Evidence ⬀448—Resort had to prior communications in construing contracts doubtful and uncertain.**

Where a contract is negotiated by exchange of telegrams and letters, and finally offer by telegram is accepted by telegram, even though contract is found in final offer and acceptance, resort may be had to prior communications in construing contract, if it is doubtful and uncertain on its face.

**3. Sales ⬀60—In construing contract, court had right to place itself in situation of parties at time they entered into contract.**

In construing contract made by telegram, after correspondence by letters and telegram, court had right to place itself as nearly as possible in situation of parties at time they entered into the contract.

**4. Sales ⬀181(5)—Admitting testimony that seed furnished was good, average, country run sorghum seed not erroneous.**

Where contract called for country run sorghum seed, in seller's suit for buyer's breach, there was no error in admitting testimony that seed furnished was good, average, country run sorghum seed.

**5. Sales ⬀181(5)—Admitting evidence that seed was the kind used and planted in state from which shipped not prejudicial.**

Where buyer contended that seed purchased was unfit for planting, seller's evidence that seed was of the kind used and planted in Mississippi, from whence it was shipped to Oklahoma, held not prejudicial error, though remote.

**6. Sales ⬀181(5)—Permitting seller to testify that seed accepted and seed rejected was of same character and quality not error.**

Where proof showed a marked decline in price of sorghum seed between time sales contracts were made and time cars were received, and that buyer accepted two cars and rejected three cars, evidence that seed in all cars was of

the same quality had material bearing on question whether buyer rejected seed on account of quality, and was properly admitted.

**7. War ⬀4—License not required to engage in business of buying and selling grain to be used for seed.**

Act Aug. 10, 1917, § 5 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛g), and proclamations of the President thereunder, held not to require license to engage in business of buying and selling grain to be used as seed.

**8. Judgment ⬀641—Seller of sorghum seed not estopped from suing for buyer's breach by decision of Food Administrator.**

Where proceeding before the federal Food Administration was to determine whether license of buyer of sorghum seed as a wholesale merchant, under Act Aug. 10, 1917, § 5 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛g), was subject to cancellation, determination of federal Food Administrator that it was not held not to estop seller from contending that seed tendered complied with contract and from suing for buyer's breach.

**9. Trial ⬀257—Requested instructions should be tendered before general charge given, unless made necessary by charge.**

Requested instructions should be tendered before the general charge is given, unless made necessary by the charge.

**10. Trial ⬀273—Exceptions to charge should be taken on completion thereof and before case submitted.**

Exceptions to the charge should be taken on completion of the same and before the cause is submitted to the jury.

**11. Sales ⬀388—Instruction that seller contracted to sell three cars of good, country run, well-sacked sorghum or cane seed held proper.**

Where contracts were for good country run sorghum cane seed, and sole reason given by buyer for refusal to accept was on account of quality, instruction that seller contracted to sell buyer three cars of good country run sorghum or cane seed was proper.

**12. Sales ⬀176(3)—Buyer could not change ground of refusal after litigation begun.**

Where buyer based refusal to accept sorghum seed solely on account of its quality, and made no objection that it was not in even-weight sacks or well sacked, he cannot, after litigation has begun, change his ground, and put his refusal on another ground, which seller might have remedied.

**13. Trial ⬀260(9)—Refusal to charge on matter fully covered in general charge not erroneous.**

In seller's suit for buyer's breach of contract to purchase sorghum seed, where question of implied warranty was fully covered and fairly submitted in general charge, refusal of seller's requested charge thereon was not error.

**14. Appeal and error ⬀882(12)—Charge on measure of damages on same theory as one requested could not be complained of.**

In seller's suit for buyer's breach of contract to purchase sorghum seed, where buyer

requested instruction framed on theory of seller's right of resale, he could not complain of charge given on ground that no such right existed.

**15. Trial ⟲261—Refusal of unintelligible instruction not error.**

Where sentence of requested instruction was wholly unintelligible, it was properly refused.

**16. Sales ⟲339—If seller, on buyer's breach, resells goods, he may recover difference between price and net proceeds of resale.**

When seller has done all that is necessary to effect delivery of goods, so as to pass title to vendee, he may store and retain them for vendee, or give vendee notice and resell them, and if he elects to pursue the former course he may sue for contract price, and if he elects the latter he may recover difference between contract price and net proceeds of resale.

**17. Sales ⟲384(7)—Seller's damages held difference between contract price and amount obtained on resale, plus expenses incident thereto.**

Where subject-matter of each sale of sorghum seed was identified, weighed, placed in a deliverable state, shipped to place of delivery, and tendered to buyer, when breaches on buyer's part occurred, actual damage to seller was difference between contract price and amount he could obtain for property on resale, plus expenses incident thereto.

**18. Sales ⟲384(7)—Under facts, seller had right to resort to resale.**

Where, after buyer refused to accept sorghum seed, seller went to place of delivery and tendered seed to buyer, which latter refused to accept, seller, having notified buyer that he would resell seed and hold buyer for loss, *held* to have right to resort to remedy of resale.

In Error to the District Court of the United States for the Eastern District of Oklahoma; Franklin E. Kennamer, Judge.

Action by E. O. Richardson against the Griffin Grocery Company. Judgment for plaintiff, and defendant brings error. Affirmed.

William J. Horton, of McAlester, Okl. (Jackman A. Gill, of McAlester, Okl., on the brief), for plaintiff in error.

Malcolm E. Rosser, of Muskogee, Okl. (George J. Leftwich, of Aberdeen, Miss., on the brief), for defendant in error.

Before STONE and VAN VALKENBURGH, Circuit Judges, and PHILLIPS, District Judge.

PHILLIPS, District Judge. E. O. Richardson (hereinafter called plaintiff) brought this action against Griffin Grocery Company (hereinafter called defendant) to recover damages for alleged breaches of two contracts for the sale of sorghum cane seed.

The contracts are found in the following telegrams and letters of the parties:

Plaintiff's Exhibit No. 1.

Western Union telegram:

"Okolona, Miss., Feb. 19, 1918.

"Griffin Gro. Co., McAlester, Okla.,

"Subject prior sale offer two cars country run orange amber sorghum seed at nine dollars per hundred sacked f. o. b. here answer quick.   E. O. Richardson."

Plaintiff's Exhibit No. 2.

Western Union telegram:

"McAlester, Okla., Feb 20th, 1918.

"E. O. Richardson, Okolona, Miss.

"Price way out of line offer seven fifty, wire confirmation.   Griffin Gro. Co."

Plaintiff's Exhibit No. 3.

"February Twentieth, 1918.

"Mr. E. O. Richardson, Okolona, Miss.

"Dear Sir: Referring to our exchange of telegrams of this date, we believe we have made you a good offer and trust that we may have confirmation from you. We can use eight or ten cars cane seed, but $7.50 is a pretty high price. We must not forget that only a year or so ago we were selling cane seed at less than $3.00 per cwt. There is plenty of room for cane seed to decline and very little for it to advance.

"Yours truly,

"JTG:A   Griffin Grocery Company."

Plaintiff's Exhibit No. 4.

Western Union telegram:

"Okolona, Miss., 21st, 18.

"Griffin Gro. Co., McAlester, Okla.

"Offer two cars good sorghum seed eight dollars hundred f. o. b. here even weight sacks wire quick.   E. O. Richardson."

Plaintiff's Exhibit No. 5.

Western Union telegram:

"McAlester, Okla., Feb. 21, 1918.

"E. O. Richardson, Okolona, Miss.

"Enter two cars good sorghum seed eight dollars see letter.   Griffin Gro. Co."

Plaintiff's Exhibit No. 6.

"Feb. 21st, 1918.

"To E. O. Richardson, Okolona, Miss.:

"Please ship to us at McAlester, Okla., via ———, the goods enumerated below, render invoice in duplicate, and mail both orig-

inal and duplicate, together with bill of lading to us at McAlester:

"2 cars sorghum seed @ $8.00 per cwt. f. o. b. Okolona. Even weight sacks. Confirmation of telegram of this date. Shipping instructions by letter."

### Plaintiff's Exhibit No. 8.

Western Union telegram:

"Okolona, Miss., 25th, 18.

"Griffin Gro. Co., McAlester, Okla.

"Your letter twenty second have four thousand bushels cane seed to offer about two thousand orange and amber and balance seeded ribbon Texas honey drip Japanese and red top all good sacks can ship this week offer same eighty fifty per hundred fob here subject to being unsold wire quick.

"E. O. Richardson."

### Plaintiff's Exhibit No. 9.

Western Union telegram:

McAlester, Okla., Feb. 25th, 1918.

"E. O. Richardson, Okolona, Miss.

"Will take entire lot eight cents big price confirm.                Griffin Gro. Co."

### Plaintiff's Exhibit No. 10.

Western Union telegram:

"Okolona, Miss., 26th, 18.

"Griffin Gro. Co., McAlester, Okla.

"Eight fifty best can do this subject instant accept will ship two cars this week.

"E. O. Richardson."

### Plaintiff's Exhibit No. 12.

Western Union telegram:

"McAlester, Okla., Feb. 26th, 1918.

"E. O. Richardson, Okolona, Miss.

"Depending your shipping two cars bought last week price too high balance.

"Griffin Gro. Co."

### Plaintiff's Exhibit No. 11.

"February 26th, 1918.

"Mr. E. O. Richardson, Okolona, Miss.

\* \* \* \* \* \* \* \* \* \*

"We are sorry we cannot get together on the balance of your seed, but we can buy recleaned seed delivered this point for less money. We figure the rate from Okolona to McAlester to be 46c. That would figure $8.96 delivered and certainly is a record price for seed. What we offered you was $8.46 delivered, and that certainly is a big price.

"If you have not sold your seed and can beat our figures, we certainly advise you to do so. There seem to be more seed showing up in Western Oklahoma and Western Kansas. Indeed, we heard a few days ago of one fellow that had some to sell at $5.50, although slightly less than a car lot.

"Yours truly, Griffin Grocery Company,

"J. T. Griffin."

### Plaintiff's Exhibit No. 13.

Western Union telegram:

"Okolona, Miss., 26th, 18.

"Griffin Gro. Co., McAlester, Okla.

"Will ship the two cars booked last week at once offer you three cars more eight twenty five per hundred fob here they are good seed and well sacked wire answer quick Chisca Hotel, Memphis.

"E. O. Richardson."

### Plaintiff's Exhibit No. 14.

Postal telegram:

"McAlester, Okla., Feb. 27th, 18.

"E. O. Richardson, Hotel Chisca, Memphis, Tenn.

"Book three cars cane seed offered eight twenty-five confirm.     Griffin Gro. Co."

### Plaintiff's Exhibit No. 15.

Western Union telegram:

"Memphis, Tenn., 27th, 18.

"Griffin Gro., McAlester, Okla.

"Confirm three cars sorghum seed eight twenty-five fob shipping point.

"E. O. Richardson."

Defendant received and paid for one of the two cars shipped under the first contract, and one of the three cars shipped under the last contract, but refused to accept and pay for the other three cars. Defendant notified plaintiff of its refusal to accept the three cars by the following telegrams:

"McAlester, Okla., Mch. 25th.

"E. O. Richardson, Okolona, Miss.

"Wilburton car trashy, poor quality, don't want it at any price and attorneys advise us under no legal obligation to accept.

"Griffin Gro. Co."

"McAlester, Okla., Mch. 25th, 1918.

"E. O. Richardson, Okolona, Miss.

Our manager Henryetta advises seed shipped there trashy and immature refused notified railroad.     Griffin Grocery Co."

"McAlester, Okla., Apr. 4, 1918.

"E. O. Richardson, Westbrook Hotel, Ft. Worth.

"Coalgate car reported containing three kinds good, bad, indifferent, refused.

"Griffin Groc. Co."

Thereafter plaintiff went to McAlester and tendered the seed to the defendant. The defendant refused the seed. Thereupon plaintiff notified defendant that he would resell the seed and hold defendant for the loss. Between March 6 and April 4, 1920, the price declined approximately 4 cents a pound. Plaintiff resold the seed and brought this action to recover the difference between the contract price and the net proceeds of the resale.

The defendant set up in its answer that the seed contained in the three cars rejected was not good seed, was immature, contained trash, dirt, chaff, and other foreign substances, and was unfit for planting, and further that the seed in the car shipped to Henryetta and diverted to Wilberton was not in even weight sacks, and that the seed in the cars shipped to Coalgate and Henryetta was not well sacked. As a special defense, the defendant set up that, after the rejection of the cane seed, plaintiff filed charges against the defendant before the federal Food Administrator for the revocation of a license issued to defendant as a wholesale merchant under the provisions of the Act of Congress of August 10, 1917 (40 Stat. 277, [section 3115⅛g, Comp. St. 1918, Comp. St. Ann. Supp. 1919]), and the proclamation of the President· promulgated thereunder, and that in the proceedings thereon the character of the seed became an issue, and that the plaintiff and defendant agreed to submit that issue to one F. F. Ferguson, for determination, and that Ferguson decided the seed did not conform to the contracts.

The decision of the federal Food Administrator for Oklahoma upon the above charges was as follows:

"June 29th, 1918.

\*    \*    \*    \*    \*

"In re Revocation of License of the Griffin Grocery Co., McAlester, Okla.

"After considering the evidence in this case and the report of F. F. Ferguson, I have concluded that this is not a case in which a Food Administrator should resort to a remedy of canceling the license of the Griffin Grocery Company. A copy of Ferguson's report is herewith inclosed.

"This decision is wholly without prejudice to any rights of the parties which they choose to assert in the courts."

The cause duly came on for trial, and resulted in a verdict and judgment for the plaintiff for $8,500. Defendant sued out this writ of error therefrom.·

[1] The first contention made by the defend-

ant is that the court erred in admitting Plaintiff's Exhibits 1, 2, 3, 8, 9, 10, 11, and 12. This contention is bottomed on the proposition that the contract for the two cars of seed first purchased is found in the telegrams of February 21, 1918 (Plaintiff's Exhibits 4 and 5), and that the contract for the three cars of seed last purchased is found in the telegrams of February 26 and 27, 1918 (Plaintiff's Exhibits 13, 14, and 15), and that the other telegrams and letters admitted in evidence formed no part of the contracts. We do not think this contention is sound.

Professor Wigmore, at page 3408, section 2425, of the second edition of his work on Evidence, says:

"When parties negotiate at a distance, by letters and telegrams—first an offer, then a declination, then a revision of the offer, then a halt upon an important term, afterwards an offer of its concession in return for the concession of some prior term now to be changed, and finally an acceptance of this concession, and thus an end of the negotiations—where are the terms of· this contract to be found? Obviously, in this congeries of letters and telegrams, as mutually modifying and complementing each other. The whole of the contract is not in any one document. Nor, on the other hand, does the whole of any one document (probably) represent a part of the contract, because some of its terms have been impaired and replaced by other documents in the series. Nor can it be said that there is a series of legal acts, each one independent, successively modifying the preceding ones; for each letter and telegram is merely tentative and preparatory, and there exists no legal act \* \* \* until the final assent is given. That assent, when it comes, adopts and vivifies the entire mass, which until then was legally inchoate only. The process is not unlike the fall of cards in the play of a trick at whist; the total effect cannot be determined till the last card has fallen, and no one card exhibits in itself the effect of the trick; yet, when all are played, the second card may prove to be the decisive factor, and may remain unimpaired by any later play.

"On the other hand, if, instead of leaving the net effect of the negotiations to be gleaned from the mass of writings, a single document is finally drawn up to replace them and to embody their net effect, and is signed or otherwise adopted by the parties, this document will now alone represent the terms of the act. Instead of leaving the wheat

mingled with the chaff, the wheat has been definitely selected and set apart in a single mass. The wheat existed there no less before than now, but it has now been placed in a single receptacle by itself."

[2, 3] Where a contract is negotiated between parties at a distance by exchange of telegrams and letters, and where offers and counter offers are made, and finally an offer is accepted, but no formal written contract is thereafter entered into, it is frequently true that the final offer and acceptance are wholly inadequate to express the true intent and meaning of the parties. This is because telegrams are reduced to a few words, and the final offer and acceptance are written and read by the contracting parties in the light of the prior communications. This is true in the instant case. Under such circumstances resort must be had to the prior correspondence in arriving at the true intent and meaning of the contract. We do not hold in such cases that the contract is found in the final offer and acceptance, but, were this true, resort may always be had to prior communications of the parties in construing a contract which is doubtful and uncertain on its face. The court, construing such a contract, has the right to place itself as nearly as possible in the situation of the contracting parties at the time they entered into the contract. U. S. v. Bethlehem Steel Co., 205 U. S. 105; 27 S. Ct. 450; 51 L. Ed. 731; Buckbee v. P. Hohenadel, Jr., Co. (C. C. A. 7) 224 F. 14, 25, 139 C. C. A. 478, L. R. A. 1916C, 1001, Ann. Cas. 1918B, 88.

[4] The second contention made by the defendant is that the court erred in admitting testimony to the effect that the seed furnished was good, average, country run sorghum seed. The contracts called for country run sorghum seed and this evidence was properly received.

[5] The third contention made by the defendant is that the court erred in admitting evidence that the seed in controversy was the kind used and planted by farmers in the state of Mississippi, where the seed was grown, and from which state it was shipped by the plaintiff. Defendant contended the seed was unfit for planting. This evidence tended to refute that contention. The record does not disclose that the conditions in Mississippi were different from those in Oklahoma. While possibly this evidence was somewhat remote, we do not think its admission was prejudicial error.

[6] The fourth contention of defendant is that the court erred in permitting the plaintiff to testify that the seed in the two cars accepted and in the three cars rejected was of the same character and quality. The proof showed that there was a marked decline in the price of seed between the time the contracts were made and the cars were received, and that the defendant accepted two cars of seed. Under such circumstances, the fact that the seed in all the cars was of the same quality would have a material bearing upon the question of whether or not the defendant rejected the seed on account of quality, and this proof was properly admitted.

[7] The fifth contention of the defendant is that the contract of sale was void because the plaintiff did not have a license under the provisions of the Act of August 10, 1917 (40 Stat. 277 [section 3115⅛g, Comp. St. 1918, Comp. St. Ann. Supp. 1919]). This act and the proclamations of the President thereunder did not require a license to engage in the business of buying and selling grain to be used for seed.

[8] The sixth contention of defendant is that the decision of Ferguson in the proceedings before the federal Food Administrator estopped the plaintiff from contending that the seed tendered complied with the contracts of sale and from maintaining this action. The purpose of the proceeding before the federal Food Administrator was to determine whether or not the license of the defendant was subject to cancellation. We fail to see how any decision in that proceeding could be binding on the parties in this case. The case of Marbury Lumber Co. v. Briggs-Shaffner Co., 186 N. C. 347, 119 S. E. 484, cited and relied upon by counsel for defendant, was a case where the agreement made practically amounted to an arbitration agreement. It was entered into for the purpose of settling a controversy between the parties to a contract for the sale of lumber, as to whether or not the lumber tendered complied with the contract of sale. The parties contemplated that the decision of the inspector to whom the issue was submitted should settle that controversy. In the instant case, the only purpose of the decision of Ferguson was to determine whether or not the license of defendant should be canceled. Ferguson's decision was limited to that purpose. The federal Food Administrator had no jurisdiction to adjudicate the rights of the parties growing out of the contracts of sale and the breaches thereof, and his decision in no way prejudiced the prosecution of this action by the plaintiff.

[9, 10] The remaining contentions of the defendant are predicated upon the charge to the jury and the refusal to give certain requested instructions. It is doubtful that the defendant is in a position to urge these contentions. The record shows that the court completed its charge to the jury on the afternoon of May 15, 1924. Thereupon the record discloses that the following proceedings took place:

"Now, gentlemen, are there any requests?
* * *

"Mr. Horton: Then I except to the part of the court's charge where he says 'good, country run, well-sacked seed,' because it does not include even weight.

"The Court: I take that to be equivalent to be of even weight—well sacked. In construing the whole correspondence and telegrams, I construe it to be good, country run sorghum seed, well sacked.

"Mr. Horton: Yes; and in another portion of the charge, relating to the same subject-matter, the court says 'inferior in kind and quality,' and omits the other elements of the contract as to the sacking. I think that was an inadvertence on the part of the court, but if it is understood that qualification—

"The Court: Yes; the jury are instructed that the plaintiff was obligated to furnish the kind of seed and in the condition which he contracted to furnish them.

"Mr. Horton: Yes; very good, your honor.

"The Court: Is that all now? You may go, gentlemen, until 7:30 o'clock, and at that time the clerk will furnish you forms of verdict.

"Thereupon court took a recess until 7:30 o'clock p. m."

Upon the convening of court at 7:30 p. m., the record discloses that the following proceedings occurred:

"Mr. Horton: We want to except to the charge of the court as to the measure of damages, and have also two or three instructions prepared hastily on some note paper here.

"The Court: You may dictate them, or I will look them over.

"Mr. Horton: Yes; I have them here in, I think, legible shape, and I offer an instruction, and then I want to except. * * *

"The Court: I think I have covered the instructions.

"Mr. Horton: In the first part of the charge, I started to complete my exceptions to the use of the words 'country run' in the first part of the charge. I want to except to those words."

From the foregoing it will be seen that at the afternoon session the court made certain corrections in its charge, and counsel for the defendant in effect approved the same. Thereupon the case was submitted to the jury. Thereafter, upon the convening of the court at the night session, counsel for the defendant undertook to take further exceptions and to present certain requested instructions. Requested instructions should be tendered before the general charge is given by the court, unless made necessary by the charge, and exceptions to the charge should be taken upon the completion of the same and before the cause is submitted to the jury. City of Chicago v. LeMoyne (C. C. A. 7) 119 F. 662, 56 C. C. A. 278; Houston v. Delaware, L. & W. R. Co. (C. C. A. 3) 274 F. 599, 603; Hickory v. U. S., 151 U. S. 303, 316, 14 S. Ct. 334, 38 L. Ed. 170; Central Vermont Ry. Co. v. Howard (C. C. A. 2) 297 F. 566, 569.

[11] The seventh contention made by defendant is that the court erred in charging the jury in substance that the plaintiff contracted to sell to the defendant "three cars of good, country run, well-sacked sorghum or cane seed." The contracts were for good, country run sorghum cane seed, and the sole reason given by the defendant for refusing the seed was on account of its quality. This instruction was proper.

[12, 13] The eighth contention made by the defendant is predicated on the refusal of the court to give defendant's requested instructions 1, 2, and 6, which were to the effect that there was an express warranty in the first contract that the seed should be in even weight sacks, and in the second contract that the seed should be well sacked, and an implied warranty in each contract that the seed was suitable for planting, and if the sacking of the seed and the character of the seed did not measure up to these warranties, the verdict should be for the defendant. The defendant based his refusal to accept the seed solely on account of the quality thereof. He made no objection that the seed was not in even weight sacks or well sacked. The question of sacking was first raised in an amendment to the original answer, made by interlineation, 10 days before the trial. It is a well-settled principle that, "where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct

upon another and a different consideration." Where a purchaser refuses to accept the goods sold, and states a specific reason therefor, he cannot, when sued for the purchase price, base his refusal upon another ground, where, if such objection had been made seasonably, the seller could have remedied it. Polson Logging Co. v. Neumeyer (C. C. A. 9) 229 F. 705, 144 C. C. A. 115; Ry. v. McCarthy, 96 U. S. 258, 24 L. Ed. 693; Note 17 Ann. Cas. 63. The question of implied warranty was fully covered and fairly submitted to the jury in the general charge of the court.

[14] The ninth contention of the defendant is based on the instruction given by the court upon the measure of damages and the refusal of the court to give instruction No. 3 requested by the defendant on the measure of damages. The court's instruction fairly told the jury that the measure of damages was the difference between the contract price and the net proceeds of the resale, but that the seller was required to make the resale at the market price, and that the market price should be considered in· determining the measure of damages. The only objection made to this instruction by the defendant was the tender to the court of defendant's requested instruction No. 3, which reads as follows:

"If you find for the plaintiff in this case, then you are instructed that the plaintiff's measure of damage, or the amount which he should recover, is the difference between the contract price, plus the freight from the point of shipment to the points of destination and also the storage and demurrage for such reasonable time as the plaintiff might effect a resale and what plaintiff could have obtained on a resale, and if you find from the evidence that the plaintiff within a short time after the defendant rejected the seed, could have sold the same for a difference between such contract price and freight, demurrage and storage charges, then it was the duty of plaintiff to have sold the seed for such sum as could then have been realized."

[15] Defendant contends that the right of resale did not exist because the contracts were executory. The correctness of this contention will be considered later. However, defendant is in no position to urge it. His requested instruction was framed on the theory of a resale. Furthermore, the last sentence of the requested instruction is wholly unintelligible, and it was properly refused. For the foregoing reasons, we cannot say that the court erred in its charge on the measure of damages and in refusing to give defendant's requested instruction No. 3.

[16] Finally, the defendant contends that the plaintiff did not have the right to resort to the remedy of resale, for three reasons: First, that the contracts were executory and title to the goods never passed to the defendant; second, that the plaintiff gave no notice of the resale; and, third, that the plaintiff elected to treat the seed as his own. Counsel for the defendant say that the contracts of sale were executory, because the plaintiff shipped the goods under bills of lading to his order and forwarded for collection sight drafts for the purchase price, drawn on the defendant, with the bills of lading attached thereto, to be delivered to the defendant on payment of the drafts. Defendant did not urge this objection in the trial court, but, on the other hand, tendered to the trial court an instruction on the measure of damages based on the theory of the right of resale in the plaintiff. The remedy of resale is not always limited to cases where the title has passed from the vendor to the purchaser at the time the latter repudiates the contract. It has been held that, upon a breach by the purchaser, the vendor is at liberty to fully perform on his own part, and when he has done all that is necessary to effect a delivery of the goods, so as to pass the title to the vendee, he may store or retain them for the vendee, or give the vendee notice and resell them. If the vendor elects to pursue the former course, he may maintain an action for the contract price of the goods; if he elects to pursue the latter, he may recover the difference between the contract price and the net proceeds of the resale. Habeler et al. v. Rogers et al. (C. C. A. 2) 131 F. 43, 45, 65 C. C. A. 281; Pabst Brewing Co. v. E. Clemens Horst Co. (C. C. A. 9) 229 F. 913, 916, 144 C. C. A. 195; Kawin & Co. v. American Colortype Co. (C. C. A. 7) 243 F. 317, 322, 156 C. C. A. 97; Garcia & Maggini Co. v. Washington Dehydrated Food Co. (C. C. A. 9) 294 F. 765, 767.

[17, 18] In the instant case, the subject-matter of each sale had been identified, weighed, placed in a deliverable state, shipped to the place of delivery, and tendered to the defendant, when the breaches on the part of the defendant occurred. Under such a state of facts, the actual damage to the plaintiff was the difference between the contract price and the amount he could obtain for the property upon a resale, plus the expenses incident to such resale. Weinberg v. Hogan Milling Co. (C. C. A. 8) 299 F. 458, 460; Kingman & Co. v. Western Mfg. Co., 92 F. 486, 488, 34 C. C. A. 489. After receiving the telegrams from defendant refusing to accept the three carloads of seed, plaintiff went to the place of

delivery and tendered the goods to the defendant, and the defendant refused to accept the same. Plaintiff notified the defendant that he would resell the goods and hold the defendant for the loss. Thereupon, under the facts of this case, plaintiff had the right to resort to the remedy of resale, and there is nothing in the record to justify the contention that he thereafter did anything which precluded or estopped him from exercising that right.

We find no error in the record justifying a reversal of the judgment, and it is therefore affirmed.